## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID FRANCO and | § | |
| DAR ECOMMERCE, LLC | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | |
| | § | |
| JUST ONE DIME, LLC; JUST ONE DIME | § | |
| COACHING, LLC, d/b/a DONE FOR YOU BY | § | Case Number: |
| JUST ONE DIME; VERITUS TEXAS ONE, LLC, | § | 1:22-cv-1226 |
| f/k/a VERITUS A SERIES OF EMBUE, LLC; | § | |
| ACTONICUS TEXAS ONE, LLC, f/k/a | § | |
| ACTONICUS, A SERIES OF EMBUE, LLC; | § | |
| TRAVIS S. KNIEP; DANILO VARRIALE; | § | |
| JOSIAH KNIEP; and KIMBERLY KNIEP | § | |
| *Defendants* | § | |

## PLAINTIFF FRANCO'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiffs, David Franco ("Plaintiff" or "Mr. Franco") and DAR Ecommerce, LLC, by and through their undersigned counsel, file this Original Complaint against Defendants Just One Dime, LLC; Just One Dime Coaching, LLC, d/b/a Done for You By Just One Dime; Veritus Texas One, LLC, f/k/a Veritus, a Series of Embue, LLC; Danilo Varriale, Josiah Kniep, Travis S. "Seth" Kniep (these Defendants collectively referred to herein as "JOD" or "JOD Defendants"); Actonicus Texas

One, LLC, f/k/a Actonicus, a Series of Embue, LLC; and Kimberly Kniep, and allege as follows:

## I.  THE PARTIES

1.     **Plaintiff David Franco** is an individual residing in the state of California.

2.     **Plaintiff DAR ECOMMERCE, LLC** is a limited liability company organized under the laws of the State of California.  David Franco & Rhina Franco are the sole members.

3.     **Defendant Just One Dime, LLC,** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Travis S. Kniep, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729.

4.     **Defendant Just One Dime Coaching, LLC, d/b/a Done for You By Just One Dime** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.   Its registered agent for service of process is Travis S. Kniep, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729.

5.      **Veritus Texas One, LLC, f/k/a Veritus, a Series of Embue, LLC** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Texas, 78731.

6.      **Actonicus Texas One, LLC, f/k/a Actonicus, a Series of Embue, LLC** is a limited liability company organized under the laws of the State of Texas. Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Texas, 78731.

7.      **Defendant Travis. S. "Seth" Kniep** is an individual residing in Austin, Texas, in Travis County.  He may be served with process at his place of business, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729, or wherever he may be found.

8.      **Defendant Danilo Varriale** is an individual residing in Miramar, Florida, in Broward County.  He may be served with process at his place of business, 19573 SW 42nd Ct., Miramar, Florida 33029, or wherever he may be found.

9.      **Defendant Josiah Kniep** is an individual residing in Austin, Texas, in Williamson County.  He is a co-founder and CEO of Just One Dime.  He may be

served with process at his place of business, 8516 Anderson Mill Road, Suite 200, Austin Texas, 78729; at his residence, 13306 Perthshire Street, Austin, Texas, 78729; or wherever he may be found.

10.    **Defendant Kimberly Kniep** is an individual residing in Austin, Texas, in Travis County.  She is the wife of Defendant Travis S. Kniep and the mother of Defendant Josiah Kniep.  She may be served at 13306 Perthshire Street, Austin, Texas, 78729; 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729; or wherever she may be found.

## II. <u>PERSONAL JURISDICTION</u>

11.    This Court has personal jurisdiction over the corporate Defendants because these LLCs are organized and have a registered agent in Texas.

12.    Defendant Travis S. ("Seth") Kniep is a resident of Texas.

13.    Defendant Josiah Kniep is an individual who resides in Texas and has purposely availed himself of the laws and protections of the state of Texas by working full-time for a Texas company.

14.    Defendant Kimberly Kniep is a resident of Texas.

15.     Defendant Danilo Varriale is a resident of Florida who has purposely availed himself of the laws and protections of the state of Texas by working full-time for a Texas company.

16.     Based on their general and specific contacts with the State of Texas, Defendants have personally availed themselves of the privilege of conducting activities within the State of Texas and have minimum contacts with the State of Texas.

17.     Additionally, Paragraph 14 of the Services Agreement between Plaintiffs and Just One Dime Coaching, LLC ("the Services Agreement"), the contract that governs in this matter, provides, in part:

> Both parties agree that any litigation or arbitration between the parties will take place in Travis County, Texas.  Both parties consent to and waive any objection to personal jurisdiction or venue in any forum located in that county, the personal jurisdiction and the exclusive venue of all federal and state courts in Travis County, Texas, for hearing all disputes under this Agreement.

### III.  SUBJECT MATTER JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is over $75,000.  There is also complete diversity of citizenship between the parties.

19.     Furthermore, this Court has subject matter jurisdiction under 28 USC § 1331, as this case raises a federal question under the laws of the United States.

20.     Venue is proper in this district under 28 U.S.C. §1391(b)(1), because the JOD Defendants reside and/or work in this district.

21.     Specifically, all but two of the Defendants are located in Travis County, Texas, part of the Austin Division of the Western District of Texas.  Josiah Kniep resides in Williamson County (also part of the Western District of Texas). Defendant Danilo Varriale is employed by the defendant companies located in Travis County.

## IV.  CONDITIONS PRECEDENT

22.     All conditions precedent to this action have been performed, have occurred, or have been waived.

## V. STATEMENT OF FACTS

### A. Done For You's Program & Promises

23.     Done For You ("DFY") by Just One Dime ("JOD") is a group of companies led by Travis S. "Seth" Kniep that pitches itself as a "turnkey service" which "turns your investment into a full-blown business on Amazon which we manage end-to-end, making it a passive investment for you."

24.     Travis Kniep makes it clear in recruitment videos that JOD does not provide coaching or training for its "Done For You" clients (also abbreviated as the "DFY Program by JOD"), as all work is done by JOD.  JOD further pledges that it launches "only high ticket products with strong margins," and that "[i]nstead of going for high sales velocity at razor thin margins, we sell products with huge profit chunks per sale."

25.     JOD advertises that it has its own Chinese staff on salary at a warehouse in China, which gives it a huge leg up on the competition.

26.     JOD claims it is highly selective in choosing its investors, and it goes through the motions of screening prospective investors.

27.     In truth, JOD accepts anyone and everyone who will pay its initiation fees.  This results in many of its investors competing against each other for sales of essentially the same products.

28.     In a cash flow example using a product that sells for $100, JOD asserts that $60 goes to costs (including $15 to Just One Dime) and the remaining $40 goes to the seller.

29.     Sadly, what Mr. Franco has learned after sinking thousands of dollars into the JOD program is that it does *not*, in fact, provide turnkey service, it does

*not* provide high-ticket items, and it does *not* provide anything approaching a 40% cut to the seller.

30.    JOD promises that investors will eventually be able to resell their JOD businesses for at least 50 times their original investments.[1]  A video entitled "Amazon Automation – Risk For Thee, None For Me" from YouTuber Coffeezilla features a clip of Defendant Travis Kniep stating that a conservative return on investment within 12 months is 200%.[2]

31.    Interestingly, that statement is redacted from the more recent versions of the video being used by JOD.

32.    But, JOD's eventual removal of this guarantee from the video does not negate the fact that numerous JOD customers, including Plaintiff Franco, relied on it to their detriment.

**B.  Plaintiff David Franco**

33.    Mr. Franco and his wife, Rhina, run their own real estate business in Los Angeles.

---

[1] *See* JOD YouTube video "Amazon Automation – FBA Business Run for You" featuring Travis Kniep (Streamed live on July 31, 2020), with accompanying Transcript.  Note: video exhibits will be provided to the Court via flash drive.
[2] *See* https://www.youtube.com/watch?v=r_EfpOV2VV0, at 3:58.

34.     In 2021, Mr. Franco invested in JOD's Done For You program with the goal of raising extra income for his family.

35.     However, instead of creating a source of passive income for Mr. Franco, JOD caused him to lose a substantial amount of money.

### C. JOD Services Agreement

36.     On May 5, 2021, Plaintiff David Franco signed a Services Agreement with Just One Dime Coaching, LLC on behalf of his company DAR Ecommerce, LLC, in which JOD stated it would be "building, managing, optimizing and scaling an Amazon store" for Mr. Franco.[3]

37.     Defendant Just One Dime, LLC is JOD's "flagship" company founded and run by Travis "Seth" Kniep and his son, Josiah Kniep. "Just One Dime" is one of the trade names used by both Defendant Just One Dime, LLC, and Defendant Just One Dime Coaching, LLC. "Exhibit A" of the Services Agreement ("the Agreement") contains a laundry list of services JOD (referred to in the Agreement as "The Company") promised to supply for Mr. Franco ("the Client"):[4]

---

[3] *See* Exhibit 1, Services Agreement, including Exhibits A-C.
[4] *Id.*

38.    These services included researching the market for high potential products; finding suppliers and managing the design process for packaging and company branding; differentiating Mr. Franco's listings from those of competitors; and building, testing, and optimizing Amazon PPC ads on Mr. Franco's listings to increase their rankings on the website.

39.    The Agreement also promised that JOD would respond to critical purchaser reviews and negative seller feedback.

40.    Exhibit C of the Agreement[5] includes a rundown of financial responsibilities and payouts assigned to JOD and to Mr. Franco, respectively. Exhibit C provides:[6]

> Company is providing the service of building and managing the store on Amazon.
>
> Client is paying for all business costs including, but not limited to manufacturing, shipping, customs & duties, photography, product videos, PPC [pay per click advertising], Amazon FBA fees, etc.
>
> FBA fees, the monthly Amazon professional account fee, and PPC fees will be paid to Amazon by the Client directly.
>
> All other expenses will be paid by Client to the Company and then Company will pay the vendor directly.  This includes the supplier, the freight-forwarding company, or any other third party who provides a service to help grow the store.  The Company will invoice the Client, payable within 15 days of sending the invoice.

---

[5] *Id.*

[6] *Id.*

The Client will pay the Company for its services as follows:

- $30,000 for building the Amazon store and launching 3 product(s) on Amazon including the services in Exhibit A. This is due before Company begins building the Amazon store. Client may pay Company to launch more products in the near future.

- A percentage of gross sales revenue is payable to Company on a sliding scale.  Company will send an invoice to Client every 3 months, payable within 15 days of sending the invoice, based on the following profit margins:

  - 0% to 9.99% margin – Just One Dime receives nothing

  - 10% to 19.99% margin – Just One Dime receives 5% gross sales revenue

  - 20% to 29.99% margin – Just One Dime receives 10% gross sales revenue

  - 30% and above margin – Just One Dime receives 15% gross sales revenue.

  - Revenue share is capped at 15% gross sales revenue

- One time fees such as product launch fee and photography are not used to calculate profit margin.  Profit margin is calculated based on ongoing fees such as manufacturing, shipping, Amazon fees, and PPC.

- $3,650 annual fee for account maintenance of Amazon store due 12 months after signing and every 12 months thereafter.  For every $500,000 in annual gross sales revenue generated on the Amazon store an additional $3,650 annual fee is charged.  If this agreement is terminated, maintenance fees are prorated.

- $10,000 per product for any additional product launches.

- 15% of sales price to Company if Client chooses to sell the business during this agreement or two years after termination of agreement by either party.  "Business" does not include the

> LLC, Corporation or business identity that holds the business, but does include the Amazon store, trademarks, patents, logo, graphic designs, the products themselves, procedures, customer contact info, and anything else owned by or directly necessary for running the business itself.

41.     Of course, Exhibit C does not mention advertising costs, which Mr. Franco learned would be considerable, and are the responsibility of the investor.

42.     The initial fee of $10,000 per product is a "development fee" that goes entirely to JOD's "overhead" costs, so Mr. Franco needed to raise the $30,000 initiation fee for his first three private label products *plus* the costs of the products themselves, shipping fees, trademark registration costs, and various other expenses for which he was responsible under the Agreement.

43.     Based on the investment plan JOD presented to him, Mr. Franco believed he had found a reliable way to greatly supplement his income.

44.     On May 6, 2021, per the Services Agreement, Mr. Franco sent his initial payment of $30,000 plus a 2.9% credit card fee to JOD.  Mr. Franco charged three separate payments of $10,298.92 on each of three credit cards.

45.     JOD assigned to Mr. Franco a "brand builder," Defendant Danilo Varriale.  Defendant Varriale came highly recommended, and he was to act as a liaison between JOD and Plaintiff.

46.     The first message Mr. Franco received directly from Defendants Varriale and Kniep was to alert him not to participate in a JOD Facebook page used by JOD investors because, according to them, "[A] few members have become toxic and many things being said are untrue." In truth, numerous JOD investors were already complaining about JOD's failure to adhere to its promises to them.

### D. Broken Promises

47.     Contrary to Defendants' promises that the Amazon business would be quickly started, that was not the case. Almost immediately after Mr. Franco signed the Services Agreement, JOD began predicting delays in assignment and shipping of the products Mr. Franco would sell in his Amazon store.

48.     There were quickly a few concerning signs.  For instance, on June 18, 2021, Defendants Varriale and Kniep informed Mr. Franco in a Slack communication that the JOD DFY Facebook group was being shut down as a "few members have become a little toxic and many things said are untrue" and this was "unnecessary negativity." Further, they demanded that, if Mr. Franco or any other JOD DFY client wishes "to continue to work with [JOD] they will have to leave the [Facebook] group and agree not to join another similar group or we will not continue with them."

49.    For months, JOD staff gave Mr. Franco excuses for why he had not received his three products, including supply-chain issues.  Finally, in December, 2021, JOD sent Mr. Franco proposals for three products:  an inverter plasma cutter (a tool for cutting steel and other materials), a panel wood room divider, and stainless steel outdoor kitchen doors.  But still Mr. Franco did not receive any of those products.

50.    In addition, when one looks at JOD's presentations that were provided to Mr. Franco for these three products, it is quite curious that all three state that the sourcing will be from Alibaba, which is an online wholesale supplier! This is quite different from JOD's advertised representation that had its own Chinese staff on salary at a warehouse in China.

51.    In a video message sent on March 24, 2022, Defendant Seth Kniep explained to Mr. Franco that circumstances in international commerce had changed exponentially since the services agreement had been signed.  Production and shipping costs had gone up.  Seth explained that Mr. Franco could stay with the Private Label program as planned, but that products would cost more and shipping would take longer.  Defendant Seth Kniep urged Mr. Franco to switch to an online arbitrage program that would involve manufacturing goods

domestically so that he would not be subject to the instability of international trade.

52.     Mr. Franco elected not to participate in the online arbitrage program.

53.     On July 21, 2022, Mr. Franco e-mailed Mr. Varriale to say it had been more than a year since he'd signed on with JOD, and he was not confident about moving forward with the program.  Mr. Franco asked for a refund of his initiation fees.  Mr. Franco did not receive a response from Defendant Varriale, but from Sarah Teagle ("Ms. Teagle"), JOD's Director of Investor Success.  In an e-mail dated July 25, 2022, Ms. Teagle informed Mr. Franco that there was no way JOD would give him a refund, partly because "[a] lot of work has been done to build your business up to this point and probably a lot more than you realize."  Ms. Teagle further stated that some of his investment had gone to pay JOD staff salaries.

54.     On October 14, 2022, Defendant Seth Kniep sent a form e-mail to JOD investors stating that the Done For You program would be ending on October 28, 2022.  Defendant Travis Kniep reiterated that there will be no refunds for Done For You investors, but that investors are welcome to participate in JOD's Online Arbitrage program, which requires payment of an additional $20,000 to fund products.

55.     On September 22, 2022, Mr. Franco was able to obtain a "temporary" refund of $10,298.92 from one of his credit cards with Wells Fargo.

56.     Understandably, JOD's recent actions have caused Mr. Franco a great deal of concern about his ability to regain the tens of thousands of dollars he has lost to Defendants.

### E. Defendant Kniep's Scheme to Funnel Investors' Funds to Kniep Family Investments

57.     JOD is something of a family business for the Knieps.  Defendant Travis Kniep's adult son, Josiah, is listed with the Texas Secretary of State as the CEO of Just One Dime.  Mr. Kniep's 18-year-old daughter, Atalie, is employed by JOD.

58.     Travis Kniep has publicly spoken about the tax benefits of operating shell companies.  He has also recently discussed publicly the fact that he and/or his wife and children own numerous investment properties in Austin, Texas; Breckenridge, Colorado; Miami, Florida; Gatlinburg, Tennessee; Guatemala; and Mexico.[7]  He has touted his wife, Kimberly, as a stellar finder of residential investment properties.[8]  It is clear that Defendant Travis Kniep – and by extension

---

[7] *See* JOD video "Tax-Free Wealth w/ Tom Wheelwright CPA (WealthAbility)," dated July 26, 2021, at 33:00-33:45.
[8] *Id.*

the Defendant companies – have the ability and the will to hide the income they have accrued from JOD investors in such private investments, and Defendants could possibly transfer JOD funds to third parties to protect themselves from lawsuits.

59.     Property records show that numerous properties are registered to Josiah Kniep and to business entities owned by Travis Kniep.[9]  It is highly likely that some JOD funds have been used to purchase some of these properties.

F. *Defendant Varriale Gets His Cut Too*

60.     Defendant Varriale, unbeknownst to JOD investors like Mr. Franco, was also taking advantage of them.   For instance, Defendant Varriale was knowingly and secretly ordering the same products for multiple JOD clients (which meant they would be competing against each other) and was likely even competing against them himself by selling these same products.

---

[9] *Id.*

## VI.  CAUSES OF ACTION

**COUNT 1 –** *Failure to Register Securities Under the Securities Act of 1933*

61.    Plaintiff Franco incorporates the preceding paragraphs as if repeated fully herein.

62.    Plaintiff Franco alleges Count 1 <u>only</u> as to the JOD Corporate Defendants and Defendants Travis Kniep and Danilo Varriale; <u>not</u> as to Defendants Actonicus Texas One, LLC; Josiah Kniep; or Kimberly Kniep.

63.    Plaintiff Franco alleges that the contract into which he and Defendants entered is an unregistered security, and as such it violates the Securities Act of 1933, as amended (the "Securities Act").  The Securities Act broadly defines securities "to include a long list of financial instruments, including 'investment contracts.'"  *SEC v. Arcturus Corp.,* 928 F.3d 400, 409 (5th Cir. 2019).  To be classified as a security, an investment contract must meet three requirements: "'(1) an investment of money; (2) in a common enterprise; (3) with profits derived from the efforts of others.'"  *Id.,* (citing *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298-99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); and quoting *Williamson v. Tucker,* 645 F.2d 404, 417-18 (5th Cir. 1981)).

64.     Plaintiff maintains that the Services Agreement is an investment contract that constitutes a security. The transactions between Plaintiff and these Defendants satisfy the three requirements enunciated by the Supreme Court in *Howey* and followed in *Arcturus*.  First, Mr. Franco initially paid JOD $30,000 with the understanding that JOD would do all the work to set up his Amazon store. In fact, these Defendants repeatedly informed Mr. Franco that this arrangement did not constitute a training course or a mentorship in online selling; that JOD would be doing *everything*.[10]  Secondly, the common enterprise agreed upon was for JOD to sell, manage, and control merchandise on the Amazon website on behalf of investor Mr. Franco.  Thirdly, Mr. Franco's profits were to be derived from the efforts of others (i.e., Defendants).  When evaluating whether an investment was made with an expectation of profits from the efforts of others, Texas courts ask whether the efforts made by others are "those essential managerial efforts which affect the failure or success of the enterprise."  *Pinter, supra,* at 73 (quoting *Searsy v. Com. Trading Corp.,* 560 S.W.2d 637, 638 (Tex. 1977).

---

[10]   *See*  https://www.youtube.com/watch?v=5aIIFqCW2ec&t=20s  at 24:00, wherein Travis Kniep states "You will learn a ton because you're going to have a front row seat to everything.  But this is not training or a mentorship as that is much more time intensive. So that would require a different pay structure."

65.     The JOD Corporate Defendants and Travis Kniep sold units in JOD's Done For You Private Label program to Mr. Franco without first properly registering them as securities as required by the Securities Act.

66.     "The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities." *Swenson v. Engelstad,* 626 F.2d 421, 424 (5th Cir. 1980). Specifically, Section 5 of the Securities Act provides that unless "a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly. . . to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security. . ." 15 U.S.C. § 7e(a).  Section 12 of the Securities Act creates civil liability for sellers violating Section 5:

> Any person who . . . offers or sells a security in violation of section 77e of this title . . . shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

> 15 U.S.C. §77l(a).

67.     To make a prima facie case for the unlawful sale of an unregistered security, a plaintiff must show "(1) the sale [of] or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of the

mails or facilities of interstate commerce in connection with the sale or offer." *Engelstad*, 626 F.2d at 425.  Mr. Franco contends he satisfies that test.  First, it is clear from the Services Agreement that the JOD Corporate Defendants and Defendant Travis Kniep offered and sold units in the JOD investment. Secondly, the units Defendants sold were not properly registered as securities. Thirdly, these Defendants used online networking platforms to solicit and communicate with potential investors.  *See SEC v. Carter,* No. 4:19-CV-100SDJ, 2020 U.S. Dist. LEXIS 200391 at *4 (E.D. Tex. 2020) (concluding that communicating with potential investors through email, obtaining investment from at least one out-of-state investor, and obtaining funds from investors through wire transfer constituted offering and selling securities through interstate commerce).

68.    For Section 12 violations, the Securities Act provides a remedy of money damages that equates to a recission of the contract.  Specifically, Plaintiff can recover "the consideration paid for [the] security with interest thereon, less the amount of any income received thereon."  15 U.S.C. §77l(a).

**COUNT 2 –** *Failure to register Securities Under the Texas Securities Act*

69.    Plaintiff Franco incorporates the preceding paragraphs as if repeated fully herein.

70.     Plaintiff Franco alleges Count 2 <u>only</u> as to the JOD Corporate Defendants <u>and</u> Defendant Travis S. Kniep; <u>not</u> as to Defendants Actonicus Texas One, LLC; Danilo Varriale; Josiah Kniep; or Kimberly Kniep.

71.     Plaintiff Franco also seeks damages under the Texas Securities Act ("TSA").  Under the TSA, a "dealer or agent may not sell or offer for sale any securities . . . unless the commissioner has issued a permit qualifying securities for sale for those securities to the issuer of the securities or a registered dealer."  TEX. GOV'T CODE §4003.001.  A plaintiff may sue a person who offers or sells a security in violation of the registration requirements for recission of the sale.  *Id.;* §4008.051. A plaintiff entitled to recission may "recover the consideration . . . paid for the security plus interest on the consideration at the legal rate from the date the buyer made the payment, less the amount of any income the buyer received on the security."  *Id.* §4008.05(a).

72.     The definition of "security" under the Texas Securities Act ("TSA") includes investment contracts.  The Texas Supreme Court has adopted a test to determine when investment contracts are securities under the TSA.  In *Life Partners, Inc. v. Arnold,* 464 S.W.3d 660, 670 (Tex. 2015), the court found that an "investment contract" for purposes of the Texas Securities Act means "(1) a contract, transaction, or scheme through which a person pays money (2) to

participate in a common venture or enterprise (3) with the expectation of receiving profits, (4) under circumstances in which the failure or success of the enterprise, and thus the person's realization of the expected profits, is at least predominately due to the entrepreneurial or managerial, rather than merely ministerial or clerical, efforts of others, regardless of whether those efforts are made before or after the transaction." *Arnold, supra,* at 667.

73.     Mr. Franco contends the JOD Services Agreement fits this definition of an investment contract. To qualify as an investment contract security, "the transaction must be such that, in reality, the seller or another party other than the purchaser, exercises the predominant managerial or entrepreneurial control on which the purchaser's anticipation of profits is based." *Arnold* at 674-75.

74.     The Texas Securities Commissioner has not issued a permit qualifying the JOD Services Agreement as a security in Texas or registered any of the JOD Corporate Defendants or Defendant Travis Kniep to sell securities.[11]

75.     Accordingly, these Defendants are liable to Plaintiff for recission under the Texas Securities Act. Upon recission, Plaintiff is entitled to recover the consideration he paid for the JOD contract plus interest thereon at the legal rate

---

[11] *See* Exhibit 2, Certificates of the Texas Securities Commissioner affirming that the JOD, Companies and Defendant Travis Kniep were not registered with the State of Texas to sell securities, and that the JOD Services Agreements were not registered securities.

from the date of payment by him, less the amount of any income he received on the security, upon tender of the security.

**COUNT 3 –** *Breach of Contract*

76.     Plaintiff Franco incorporates the preceding paragraphs as if repeated fully herein.

77.     Plaintiff alleges Count 3 <u>only</u> as to the JOD Corporate Defendants, and Defendant Travis Kniep; but <u>not</u> as to Defendants Actonicus Texas One, LLC, Kimberly Kniep, Josiah Kniep, and Danilo Varriale.

78.     The parties in this matter entered into a valid contract, i.e., the Services Agreement.

79.     Mr. Franco performed all of his obligations under the contract.

80.     Those Defendants materially breached the contract by failing to complete most of their obligations under the contract, including building his Amazon store in a timely manner.

81.     Those Defendants materially breached the contract by failing to assign Mr. Franco quality products with high profit margins as promised.

82.     As a result of these Defendants' material breach of the contract, Mr. Franco has suffered damages.

**COUNT 4 – *Unjust Enrichment***

83.     Plaintiff Franco incorporates the preceding paragraphs as if repeated fully here.

84.     Plaintiff Franco alleges Count 4 <u>only</u> as to the JOD Corporate Defendants, and Defendants Travis Kniep, Josiah Kniep, Danilo Varriale, and Actonicus Texas One, LLC, but <u>not</u> Kimberly Kniep.

85.     Unjust enrichment is not a distinct independent cause of action, but rather a theory of recovery.  *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.— Corpus Christi 2002, pet. denied). A party may recover under an unjust enrichment theory where a person has obtained a benefit from another due to fraud, duress, or taking of undue advantage.  *Id*.

86.     If Mr. Franco does not prevail in his claim for legal remedies such as his breach of contract claim or his deceptive trade practices claim, he will lack a suitable remedy at law.

87.     Defendants' conduct in accepting Plaintiff's investment without carrying out its duties under the Services Agreement and improperly using these

funds for themselves constitutes more than unfair conduct; Defendants profited

from their own fraudulent claims and took undue advantage of Plaintiff.  Thus,

Plaintiff seeks damages in unjust enrichment as an alternative remedy.

**COUNT 5 -** *Violations of the Texas Deceptive Trade Practices – Consumer Protection Act (TEX. BUS. & COM. CODE §17.46 ET SEQ.)*

88.     Plaintiff Franco incorporates the preceding paragraphs as if repeated

fully here.

89.     Plaintiff alleges Count 5 as to <u>all</u> Defendants except for Actonicus

Texas One, LLC, Kimberly Kniep, and Josiah Kniep.

90.     Defendants engaged in an unconscionable action or course of action

that, to Plaintiff's detriment, took advantage of his lack of knowledge, ability,

experience, or capacity to a grossly unfair degree.  Specifically, Defendants lured

Mr. Franco into what they knew was an unfavorable business arrangement for him

by taking unfair advantage of the fact that Defendants have far more knowledge

about Amazon sales than Mr. Franco does.

91.     Defendants falsely represented that they would  set up for Plaintiff a

"full blown business" on Amazon, which they would "manage end-to-end,"

making it a "passive investment" for Mr. Franco.  In actuality, Defendants took

Mr. Franco's money and failed to follow through on their claims that they would

provide "turnkey service."  Mr. Franco's initial investment of $30,000 went to pay Defendants and their staff, but in the end, Defendants failed to provide the support and services they promised Mr. Franco.  Mr. Franco alone has had to bear the losses.

92.    Defendants fraudulently employed a "bait and switch" technique, promising a better-quality product, more marketable than the items they actually provided. JOD drew in Plaintiff by falsely advertising that it deals only  in "high ticket" products with large profit margins, when in reality it offered highly competitive products on which Mr. Franco has taken a considerable loss. Defendants' fraudulent intent is demonstrated by evidence such as a You Tube video presentation in which Travis Kniep personally explains to potential investors how they can avoid liability by setting up shell companies.[12]

93.    Plaintiff Franco has suffered economic damages from Defendants' deceptive and fraudulent behavior, and he is entitled to treble damages and attorney fees and costs under TEX. BUS. & COM. CODE §17.50.

---

[12] *See* https://www.youtube.com/watch?v=5aIIFqCW2ec at 37:20.

**COUNT 6 -** *Fraudulent transfer of funds*

94.     Plaintiff Franco incorporates the preceding paragraphs as if repeated fully herein.

95.     Plaintiff brings this claim against all named Defendants

96.     Plaintiff Franco brings this claim under the Texas Uniform Fraudulent Transfer Act ("TUFTA") under Chapter 24 of the Texas Business & Commerce Code.

97.     The fraudulent transfer was a transfer of funds Plaintiff Franco invested in the JOD "Done For You" program.  Defendants Travis Kniep and his Done for You program contracted with Plaintiff Franco to perform certain services. Defendants failed to perform the services for which they contracted, and on information and belief, they used Mr. Franco's investment to buy numerous properties.

98.     On information and belief, the fraudulent transfer was made by Defendants for their own financial benefit, and to the sole detriment of Plaintiff Franco and similarly situated "creditors" of JOD.  The JOD Defendants now claim they do not have the funds issue refunds to the program's investors.

99.     Defendants transferred said assets without receiving a reasonably equivalent value in exchange for the transfer, as they transferred the funds without transferring their debts; and Defendants intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due. *See* TEX. BUS. & COM. CODE §24.0005(2)(B).

100.    Plaintiff Franco has suffered damages due to the Defendants' fraudulent behavior and is entitled to judgment in his favor for the value of the assets transferred up to the amount of any judgment he receives.

## COUNT 7 – *Conspiracy to Commit Fraud*

101.    Plaintiff Franco incorporates the preceding paragraphs as if repeated fully here.

102.    First, all of the named Defendants were members of a combination of two or more persons.

103.    Second, the object of the combination was to accomplish (1) an unlawful purpose, or (2) a lawful purpose by unlawful means, the other claims in this Complaint.

104.    Third, the members of the said group had a meeting of the minds on the object or course of action.

105.    Fourth, one or more of the members committed an unlawful, overt act to further the object or course of the action; to wit:  they used income improperly obtained from JOD Done For You investors to locate and/or purchase lucrative properties for the benefit of the Kniep family.[13]

106.    Several of these properties are in the name of Defendants Josiah Kniep or Actonicus Texas One, LLC.

107.    Plaintiff suffered damages as a proximate cause of Defendants' improper actions.

## VII.  JURY DEMAND

108.    Plaintiff David Franco asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VIII.  PRAYER FOR RELIEF

Wherefore, Plaintiff Franco prays for judgment as follows:

   a.  Actual and economic damages including liquidated and
       unliquidated damages;

---

[13] Travis S. Kniep bragged in a JOD podcast that his wife Kimberly has a talent for finding valuable real estate investments for him.  *See* JOD video "Tax-Free Wealth w/ Tom Wheelwright CPA (WealthAbility)."

b.  Punitive damages;

c.  Treble damages, where appropriate;

d.  Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law;

e.  Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law from the date of judgment until paid in full;

f.  Court costs;

g.  Attorney fees; and

h.  All other relief, special or general, legal or equitable, as Plaintiff may be shown to be justly entitled to receive.

Respectfully submitted on this _20th_ day of November, 2022.

Rain Levy Minns Udall
State Bar No. 24034581
Minns Law Firm, P.C.
d/b/a Rain Minns Law Firm
4412 Spicewood Springs Rd., Suite 500
Austin, Texas 78759-8583
Tel.: 512-372-3222
Fax: 512-861-2403
rain@rainminnslaw.com

ATTORNEY IN CHARGE FOR
PLAINTIFF DAVID FRANCO